UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCKET MORTGAGE, LLC,

|  |  |
|---|---|
| Plaintiff, | Civil Action No. 23-10583 |
| v. | Matthew F. Leitman<br>United States District Judge |
| CITO MECHANICAL DESIGN, INC.<br>and CLAUDIA PAOLA BLACKWOOD, | David R. Grand<br>United States Magistrate Judge |
| Defendants. | |

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST ONLY DEFENDANT CITO MECHANICAL DESIGN, INC. (ECF No. 26)

Before the Court is Plaintiff Rocket Mortgage, Inc.'s ("Rocket Mortgage") Motion for Default Judgment Against Only Cito Mechanical Design, Inc. ("Cito").[1] (ECF No. 26). Despite having been served with process on March 23, 2023 (ECF No. 7), Cito has not appeared in this case, nor has it filed a response to Rocket Mortgage's motion.

For the following reasons, **IT IS RECOMMENDED** that Rocket Mortgage's Motion for Default Judgment **(ECF No. 26)** be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] This case has been referred to the undersigned for all pretrial purposes.  (ECF No. 14).

## I.     REPORT

### A.     Background[2]

On March 13, 2023, Rocket Mortgage commenced this action for breach of contract and fraud[3] against Cito and its shareholder and loan officer, Claudia Blackwood.  (ECF No. 1).  In its complaint, Rocket Mortgage alleges that it entered into a Broker Agreement with Cito dated November 29, 2018 (the "Agreement").  (*Id.*, PageID.4).  Pursuant to the Agreement, Cito submitted seven loan applications to Rocket Mortgage for underwriting (the "Applications").  (*Id.*, PageID.4-5).  Rocket Mortgage approved the Applications and, in reliance on the information contained therein, originated seven loans to individual borrowers (the "Subject Loans").  (ECF No. 26-2, PageID.203).

Rocket Mortgage further alleges that, following the closing of the Subject Loans, it learned that the submission of the Applications for the Subject Loans and the documents supporting the Applications were part of a deliberate mortgage fraud scheme.  (ECF No. 1, PageID.11-14).  More specifically, Rocket Mortgage alleges that, unbeknownst to it before originating the Subject Loans, the Applications and supporting documents contained inaccurate information regarding the borrowers' income, intent to use and

---

[2] Since Cito has not appeared or otherwise responded in this action, for purposes of this motion Rocket Mortgage's alleged facts in the complaint are taken as true.  *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)).

[3] In its instant motion for default judgment, Rocket Mortgage indicates that it is dismissing, without prejudice, its fraud claim against Cito.  (ECF No. 26, PageID.189).

occupy the subject properties as primary residences, and liabilities.[4] (*Id.*, PageID.11-13). For instance, certain applicants' incomes were inflated by misrepresenting that they had income from leases of property they owned when, in fact, the leases were fraudulent, and the applicants were actually residing in the leased properties (the "Sham Lease Income Fraud"). (*Id.*, PageID.12).   And, in connection with two of the Federal Housing Administration ("FHA") loans, Rocket Mortgage alleges that Cito violated the FHA's dual capacity prohibition when Blackwood served as both the mortgage broker and the real estate agent for the borrowers/purchasers. (*Id.*, PageID.12-13).  In a declaration submitted with the instant motion for default judgment, Kevin Randolph, Senior Vice President of Client Experience Operations for Rocket Mortgage, alleges that Rocket Mortgage reasonably relied on the misrepresentations contained in the Applications and supporting documentation when it originated the Subject Loans and proceeded to sell the Subject Loans to third-party investors in accordance with its ordinary and customary business practices. (ECF No. 26-2, PageID.204).

In its motion, Rocket Mortgage alleges that, due to the inaccurate information in the Applications and supporting documents submitted by Cito, the third-party investors to which Rocket Mortgage sold the loans required Rocket Mortgage to repurchase four of the Subject Loans. (*Id.*).  Rocket Mortgage states that it has in fact done so and, to mitigate its damages, re-sold the loans in the secondary market to other investors at discounted prices

---

[4] The misrepresentations and inaccurate information specific to each of the Subject Loans, as well as basic identifying information concerning the Subject Loans, are described in a chart attached to Rocket Mortgage's motion for default judgment.  (ECF No. 26-2, PageID.210-13).

due to the defects associated with those loans (collectively, the "Sold Loans").  (*Id.*, PageID.204-05).  Rocket Mortgage avers that it has incurred damages related to the Sold Loans in the amount of $747,636.00.  (*Id.*, PageID.205).

Rocket Mortgage further alleges that, due to the inaccurate information in the Applications and supporting documents Cito submitted to it, for three FHA Loans, the United States Department of Housing and Urban Development ("HUD") may require Rocket Mortgage to execute an Indemnification Agreement.  (*Id.*, PageID.206).

In its complaint, Rocket Mortgage alleges that it provided Cito with written notices of its breaches of the Agreement.  (ECF No. 1, PageID.17).  Nevertheless, Cito did not cure the breaches, repurchase the Subject Loans, or otherwise indemnify and hold Rocket Mortgage harmless against all losses, damages, and other liabilities, thus willfully failing and/or refusing to honor the terms of the Agreement.  (*Id.*).

After filing its complaint, Rocket Mortgage properly served Cito with process on March 23, 2023.  (ECF No. 7).  On May 16, 2023, the Clerk entered a default against Cito, pursuant to Fed. R. Civ. P. 55(a), for its failure to respond to the summons and complaint.  (ECF No. 11).  On October 6, 2023, Rocket Mortgage filed the instant motion for entry of default judgment against Cito.  (ECF No. 26).  Cito has not responded to this motion.  Having reviewed the relevant briefing and pleadings, the Court dispenses with oral argument pursuant to E.D. Mich. L.R. 7.1(f)(2).

### B.    Legal Standards

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk

must enter the party's default." Fed. R. Civ. P. 55(a). After default has been entered, the party seeking relief from the defaulting party may apply for a default judgment. *See* Fed. R. Civ. P. 55(b). An application for a default judgment may be made to the Clerk "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation …." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Unless the party against whom a default judgment is sought is a minor or incompetent, notice of the motion is not required. *See id.*

Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, case law indicates that the Court must exercise "sound discretion" when determining whether to enter a judgment. *State Farm Bank v. Sloan*, No. 11-10385, 2011 WL 2144227, at *2 (E.D. Mich. May 31, 2011); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 2685 (3d ed. 1998). As set forth above, once a default is entered, well-pleaded allegations in the plaintiff's complaint, except those pertaining to the amount of damages, are taken as true. *See Ford Motor Co.*, 441 F. Supp. 2d at 848; *Trice v. Lake & Country Real Estate*, No. 86-1205, 1987 WL 38852, at *2 (6th Cir. Oct. 29, 1987) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")). "Nevertheless, the Court still has an obligation to assess whether the factual allegations are legally sufficient to state the alleged cause of action." *Aljahmi v. Ability Recovery Svcs.*, No. 17-13772, 2020 WL 4108967, at *2 (E.D. Mich. Apr. 2020) (citing *In re Industrial Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) ("While a default constitutes an

admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions

of law alleged therein, nor establish the legal sufficiency of any cause of action ....  [I]t

remains for the court to consider whether the unchallenged facts constitute a legitimate

cause of action, since a party in default does not admit mere conclusions of law.")).

### C.   Analysis

#### 1.   Jurisdiction

Before entering a default judgment, the Court must determine whether it has

jurisdiction over the case and the parties.  *See Ford Motor Co.*, 441 F. Supp. 2d at 845.

Here, the Court has both subject matter jurisdiction and personal jurisdiction over Cito.

Rocket Mortgage has sufficiently alleged diversity jurisdiction, pursuant to 28 U.S.C. §

1332, as this is an action between citizens of different states and the amount in controversy

exceeds $75,000, exclusive of interest and costs.  (ECF No. 1, PageID.3).  The Court must

also "determine whether it has jurisdiction over the defendant before entering a judgment

by default against a party who has not appeared in the case."  *Ford Motor Co.*, 441 F. Supp.

2d at 845.  Here, the Court concludes that it has personal jurisdiction over Cito by virtue

of the forum selection clause contained in the Agreement.  (ECF No. 1, PageID.3; ECF

No. 1-1, PageID.42 (providing that parties to Agreement agree to submit to the jurisdiction

of any Michigan state or federal court)).

#### 2.   Liability

As outlined above, Cito has, by default, admitted all well-pleaded allegations in

Rocket Mortgage's complaint.  Rocket Mortgage now seeks entry of a default judgment

against Cito with respect to the following counts: (1) Count I – Breach of Contract; (2)

Count II – Breach of Express Indemnity Agreement; (3) Count III – Specific Performance; and (4) Count V – Declaratory Relief.

Each of these claims is premised on the enforcement of certain specific terms and conditions of the Agreement.  To prevail on a breach of contract claim, Rocket Mortgage must demonstrate: (1) there was a contract;[5] (2) Cito breached the contract; and (3) the breach resulted in damages to Rocket Mortgage.  *See Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 100 (2016).  In addition, "[a]n indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation."  *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 173 (2014).  As with other contracts, the court's "primary task in construing a contract for indemnification is to give effect to the parties' intention at the time they entered into the contract … by examining the language of the contract according to its plain and ordinary meaning."  *Id.* at 174.

Here, where by virtue of its default, Cito has admitted the well-pleaded factual allegations in the complaint, it is clear that the parties entered into the Agreement.  (ECF No. 1, PageID.4).  Additionally, Cito materially breached the terms of the Agreement.  For each of the Subject Loans, Cito made certain representations and warranties to Rocket Mortgage, including, but not limited to:

## 5.2.    COMPLIANCE   WITH   LENDER   POLICIES   AND

---

[5] Here, the Agreement constitutes a valid contract between Rocket Mortgage and Cito.  "In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.  *See Monroe Bank & Trust v. Jessco Homes of Ohio, LLC*, 652 F. Supp. 2d 834, 838 (E.D. Mich. 2009) (internal quotations omitted).  These elements are satisfied in this case.

**PROCEDURES.** The origination of each mortgage loan complies in all respects with the terms of this Agreement. Each Application submitted was originated by Broker[6] and not by a third party. All Applications, including all mortgage loan documents and information and documentation submitted in connection with such Applications, have been prepared and/or completed in accordance with applicable law and all information provided by each of Applicant and Broker in such Applications are true and correct in all respects and do not fail to disclose any facts which could be material or which would make such information misleading. All broker compensation has been fully disclosed to Applicant in compliance with applicable laws. The Applicant has executed and received a copy of all broker disclosure(s) as required by applicable law and there are no disputes with respect to Broker's compensation in connection with the origination or closing of each mortgage loan.

**5.3 FRAUD.** Broker shall not submit any Application or related documents containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance of its obligations under this Agreement, whether performed by Broker, its employees or licensees, or the Applicant, or any other third party retained by or controlled by Broker or Applicant (other than affiliates of Lender) involved in the origination of the mortgage loan. Broker understands and agrees that in the event Lender reasonably believes misrepresentations or fraud generated either through the Broker (by any Applicant or third party), by the Broker, or with the Broker's knowledge exist in an Application or any related documents, Lender may report such misrepresentation or fraud to the appropriate state and federal regulatory authorities, law enforcement agencies, and fraud databases. Broker acknowledges the importance of Lender's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Lender's disclosure of such information.

**5.4. FACTUAL DISCLOSURE.** All facts relating to any Application and/or related mortgage loan transaction which are known or should be known to Broker which may adversely affect the value of the mortgaged property, the credit, character or capacity of the Applicant, the validity of the mortgage, or any other aspect of the

---

[6] In the Agreement, "Broker" refers to Cito.  (ECF No. 1-1, PageID.26).

transaction have been disclosed in writing to Lender.

**5.5. NO ADVERSE CIRCUMSTANCES.** Broker has no knowledge of any circumstances or conditions with respect to any Application, mortgaged property, Applicant or Applicant's credit standing that reasonably could be expected to cause third party investors to regard the related mortgage loan as an unacceptable investment, cause the mortgage loan to become delinquent or adversely affect the value or marketability of the mortgage loan.

**5.6. FHA LOANS.** If the Application is delivered to Lender for a loan intended to be insured by the [FHA], it has been originated in conformance with all applicable FHA requirements and Broker is authorized to under applicable FHA regulations to originate an FHA loan. Broker has taken no action or failed to take any action, the effect of which would prevent Lender from obtaining FHA insurance or which would at any time invalidate, in whole or in part, the FHA insurance on any submitted Application which is subsequently approved, closed and funded by Lender.

(ECF No. 1-1, PageID.35-36) (footnote added). As set forth above, however, Rocket Mortgage alleges that Cito submitted the Applications and supporting documents to it with inaccurate information concerning the borrowers' income, liabilities, and/or intent to occupy the subject properties. (ECF No. 1, PageID.11-12). Similarly, in connection with loans insured by the FHA, Rocket Mortgage alleges that Cito violated the FHA Dual Capacity Prohibition by having Blackwood serve as both the mortgage broker and the real estate agent for the borrowers/purchasers. (*Id.*, PageID.12). Moreover, as set forth below, these material breaches of the Agreement caused Rocket Mortgage to incur damages. Thus, Rocket Mortgage is entitled to a judgment on liability against Cito on Counts I, II, III, and V of the complaint.

    *3.   Damages*

Rocket Mortgage's alleged damages can be divided into two categories – damages

9

as to the Sold Loans and relief requested as to the FHA Loans.

With respect to the Sold Loans, Rocket Mortgage requests a money judgment for losses sustained as a result of having to repurchase the Sold Loans from the original investor and then sell the Sold Loans at discounted prices due to Cito's material breaches of the Agreement. (ECF No. 26, PageID.193-94). In support of this request, Mr. Randolph avers that these damages amount to $747,636.00. (ECF No. 26-2, PageID.205, 210-13). He explains that this amount was calculated as follows: (a) amount paid to the original investor to repurchase the Sold Loan (unpaid principle balance of the loan plus accrued and unpaid interest at the time of repurchase), **plus** (b) additional fees Rocket Mortgage paid to the original investor and/or the investor's servicer upon repurchase of the Sold Loan (if any), **plus** (c) compensation Rocket Mortgage paid to Cito at origination of the Sold Loan (if any), **minus** (d) payments to principal and interest on the Sold Loan since the repurchase from the original investor through the date Rocket re-sold the Sold Loan on the secondary market, **minus** (e) proceeds Rocket Mortgage received from the subsequent purchaser of the Sold Loan on the secondary market. (*Id.*, PageID.205). The Court agrees that the information and calculations provided appear accurate and reasonable and, thus, it recommends awarding Rocket Mortgage damages in the amount of $747,636.00.[7]

---

[7] Rocket Mortgage also seeks damages for "legal fees and costs totaling $6,745.00 related to Cito's submission of the inaccurate Applications and supporting documents." (ECF No. 26, PageID.194; *see also* ECF No. 26-2, PageID.207). The Agreement specifically provides for an award of "reasonable attorneys' fees and expenses" incurred by Rocket Mortgage as a result of Cito's breach of the Agreement (ECF No. 1-1, PageID.37), and under Michigan law, courts will enforce such provisions unless they are contrary to public policy. *See Kelly Svcs., Inc. v. De Steno*, 760 F. App'x 379, 383 (6th Cir. 2019). However, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, where Rocket Mortgage has not submitted an affidavit explaining the hours spent and work

Finally, with respect to the FHA Loans, Rocket Mortgage requests a declaratory judgment declaring that Cito is obligated, under Section 8 of the Agreement, to defend, indemnify, and hold Rocket Mortgage harmless for "any and all losses, liabilities, claims, damages, costs (including allocated costs of in-house counsel), and actions suffered or incurred" by Rocket Mortgage as a result of Cito's breach of "any covenant, condition, term, obligation, representation or warranty" contained in the Agreement, including all liabilities it might incur by virtue of it being forced to sign indemnification agreements with HUD.  (ECF No. 1-1, PageID.38; *see also* ECF No. 26, PageID.194).  The Court finds such relief is appropriate pursuant to the explicit terms of the Agreement itself.  Section 8 contains the provision on which the request for a declaratory judgment is based (ECF No. 1-1, PageID.38), and, as explained above, *see supra* at 7-9, the complaint adequately alleges facts that establish a breach of the Agreement by Cito.  Thus, the Court recommends that the requested declaratory judgment be entered.  *See Citizens Ins. Co. of the Midwest v. Allen*, No. 2:22-CV-10733, 2022 WL 16951640, at *1 (E.D. Mich. Nov. 14, 2022) (granting motion for default judgment with respect to request for a declaratory judgment where "[p]laintiff pleaded facts that entitle it to a declaratory judgment.").

## II.    RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Rocket Mortgage's Motion for Default Judgment **(ECF No. 26)** be **GRANTED IN PART** to the extent that a

---

performed, nor any billing records or explanation of costs incurred, it has not established its entitlement to the attorney's fees or costs requested.

final judgment[8] should be entered against Cito in the amount of $747,636.00.  **IT IS FURTHER RECOMMENDED** that a declaratory judgment be entered declaring that Cito is obligated, under Section 8 of the Agreement, to defend, indemnify, and hold Rocket Mortgage harmless for "any and all losses, liabilities, claims, damages, costs (including allocated costs of in-house counsel), and actions suffered or incurred" by Rocket Mortgage as a result of Cito's breach of "any covenant, condition, term, obligation, representation or warranty" contained in the Agreement, including all liabilities it might incur by virtue of it being forced to sign indemnification agreements with HUD.  In all other respects, **IT IS RECOMMENDED** that Rocket Mortgage's motion be **DENIED**.

Dated: November 27, 2023                    s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge

---

[8] Pursuant to Fed. R. Civ. P. 54(b), when an action presents more than one claim for relief, or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court "expressly determines that there is no just reason for delay."  In making this determination, the Court should consider at least the following factors: (a) the relationship between the adjudicated claims and unadjudicated claims; (b) the possibility that the need for review might or might not be mooted by future developments in the district court; (c) the possibility that the reviewing court might be obliged to consider the same issues a second time; (d) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (e) miscellaneous factors such as delay, economic and solvency conditions, shortening the time of trial, frivolity of competing claims, expenses, and the like.  *See Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 61 n. 2 (6th Cir. 1986).  Here, consideration of these factors warrants entry of a final judgment of default against Cito because there is "no just reason for delay."  The relief in the default judgment against Cito is limited to the breaches of the Agreement by Cito for submitting inaccurate documents.  The fact that the fraud claim against defendant Blackwood in Count IV of the complaint and Blackwood's amended counterclaim would continue in this Court is not a reason to prevent Rocket Mortgage from obtaining a final judgment against Cito at this time.  The fraud claim requires Rocket Mortgage to prove more than the submission of inaccurate documents, and the amended counterclaim involves only one loan (that is not one of the Subject Loans for which judgment is being requested).  Lastly, given that this a judgment by default, any chance of appeal by Cito is slim, and the threat of an insolvency or a liquidation of assets by Cito is heightened.

## <u>NOTICE REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 27, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager