UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCKET MORTGAGE, LLC,

                Plaintiff,                Civil Action No. 23-10583

v.                                         Matthew F. Leitman
                                           United States District Judge

CITO MECHANICAL DESIGN, INC.      David R. Grand
and CLAUDIA PAOLA BLACKWOOD,   United States Magistrate Judge

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION TO DISMISS DEFENDANT BLACKWOOD'S AMENDED COUNTERCLAIM UNDER RULE 12(b)(6) (ECF No. 34)

Before the Court is a Motion to Dismiss Defendant/Counter-Plaintiff Claudia Paola Blackwood's Counterclaim Under Rule 12(b)(6), filed by Plaintiff/Counter-Defendant Rocket Mortgage, LLC ("Rocket Mortgage") on December 7, 2023. (ECF No. 34). On January 18, 2024, Defendant Claudia Paola Blackwood ("Blackwood") filed a response to Rocket Mortgage's motion (ECF No. 38), and Rocket Mortgage filed a reply brief on February 5, 2024 (ECF No. 41).

An Order of Reference was entered on June 1, 2023, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 14). Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

I.     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Rocket Mortgage's Motion to Dismiss Blackwood's Counterclaim Under Rule 12(b)(6) **(ECF No. 34)** be **GRANTED**.

II.    **REPORT**

   A.    **Background**

      1.    *Rocket Mortgage's Complaint*

On March 13, 2023, Rocket Mortgage commenced this action against Cito Mechanical Design, Inc. ("Cito") and its shareholder and loan officer, Claudia Blackwood. (ECF No. 1). In its complaint, Rocket Mortgage alleges that it entered into a Broker Agreement with Cito dated November 29, 2018 (the "Agreement"). (*Id.*, PageID.4). According to Rocket Mortgage, Blackwood, the responsible loan officer, signed the Agreement on behalf of Cito and was also identified as the contact person for Cito. (*Id.*). Pursuant to the Agreement, Cito, through Blackwood, submitted seven loan applications to Rocket Mortgage for underwriting (the "Applications"). (*Id.*, PageID.4-5). Rocket Mortgage approved the Applications and, in reliance on the information contained therein, originated seven loans to individual borrowers (the "Subject Loans"). (*Id.*).

Rocket Mortgage further alleges that, following the closing of the Subject Loans, it learned that the submission of the Applications for the Subject Loans and the documents supporting the Applications were part of a deliberate mortgage fraud scheme conducted by Cito and Blackwood. (*Id.*, PageID.11-14). More specifically, Rocket Mortgage alleges that, unbeknownst to it before originating the Subject Loans, the Applications and

2

supporting documents contained inaccurate information regarding the borrowers' income, intent to use and occupy the subject properties as primary residences, and liabilities. (*Id.*, PageID.11-13). In relevant part, then, Rocket Mortgage pleads a fraud claim against Blackwood. (*Id.*, PageID.21-22).

### 2. Blackwood's Counterclaim and Rocket Mortgage's Initial Motion to Dismiss

On May 9, 2023, Blackwood filed an answer to Rocket Mortgage's complaint,[1] as well as a counterclaim, in which she alleged that Rocket Mortgage "willfully refused to pay [her] earned broker commission" of $8,445.24 after the "funding/closing of the loan # 3512696044 ["Loan 6044"] …. (ECF No. 9, PageID.69). Thus, Blackwood sought reimbursement of this $8,445.24. (*Id.*).

On May 31, 2023, Rocket Mortgage filed a motion to dismiss Blackwood's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 13). In its motion, Rocket Mortgage argued that: (1) Blackwood had failed to plead a contractual relationship between Rocket Mortgage and *herself* (as opposed to Cito), such that Rocket Mortgage would be liable for the alleged failure to pay commission to her; and (2) even if there was a contractual relationship between Rocket Mortgage and Blackwood, she failed to state a claim because no commission was requested. (*Id.*, PageID.89-94).

In her response brief, Blackwood abandoned her breach of contract claim, conceding that she had no contractual relationship with Rocket Mortgage. (ECF No. 17,

---

[1] On February 5, 2024, a default judgment was entered against Cito. (ECF No. 40). Thus, Blackwood is the sole remaining defendant in this case.

3

PageID.112). However, she switched tacks, and alleged that Rocket Mortgage "acted maliciously, deliberately, willfully and fraudulently" in removing the broker commission on Loan 6044 and that such actions violated both the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). (*Id.*, PageID.112-13). Essentially, Blackwood argued that the commission for Loan 6044 was identified in an unsigned closing disclosure dated August 20, 2022 (the "August Closing Disclosure") and then fraudulently removed by Rocket Mortgage from the subsequent and final closing disclosure (the "Final Closing Disclosure"), which violated both statutes. (*Id.*).

On October 10, 2023, the Court heard oral argument on Rocket Mortgage's initial motion to dismiss Blackwood's counterclaims. In relevant part, the Court granted Rocket Mortgage's motion to dismiss Blackwood's counterclaims, to the extent they were claims for breach of contract and violation of the TILA or RESPA. (ECF No. 27, PageID.240). However, the Court denied without prejudice Rocket Mortgage's motion to dismiss as to Blackwood's fraud claim, stating:

> In her response to [Rocket Mortgage's] motion, Blackwood appears to assert that [Rocket Mortgage] misrepresented in an August 2022 Closing Disclosure that it would pay a commission whenever the closing on the loan at issue occurred and then fraudulently removed the commission when it prepared the Final Closing Disclosure in September 2022. While [Rocket Mortgage] argues that the alleged promise to pay a commission in the future is nothing more than a promise to render future performance, which cannot state a claim for fraud under Michigan law, courts have recognized an exception to this general rule and have found that a party may "maintain a fraud action if a promise is made in bad faith without the intention to perform it." Here, Blackwood specifically alleges that the plaintiff "acted maliciously, deliberately, willfully and fraudulently" when it removed the statement that she would be paid a commission on the loan at issue. Moreover, at oral argument, Blackwood referenced other

4

> communications that she allegedly received from [Rocket Mortgage] during the relevant time period, as well as a course of business allegedly practiced by [Rocket Mortgage], that she argued support her claim that [Rocket Mortgage] acted fraudulently in failing to pay her the commission at issue. **Given all of the foregoing, the best course of action is to allow Blackwood to file an amended counterclaim for fraud, detailing her allegations with the requisite level of particularity**.

(*Id.*, PageID.240-41) (internal citations omitted) (emphasis added).

### 3. Blackwood's Amended Counterclaim

On November 9, 2023, Blackwood filed her Amended Counterclaim, in which she attempts to plead a claim for fraud against Rocket Mortgage with the requisite level of particularity. (ECF No. 29). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Specifically, in her Amended Counterclaim, Blackwood alleges that Rocket Mortgage "made false representations" when it indicated on the August Closing Disclosure that broker commission would be paid on Loan 6044; she asserts that despite this representation, all along, Rocket Mortgage had "the undisclosed malice [sic – malicious] intention of not paying" that commission. (ECF No. 29, PageID.246-47). According to Blackwood, she relied on the "promise" set forth in the August Closing Disclosure and "worked really hard and diligently" on Loan 6044, only to be "blindsided" toward "the very end of the transaction" when Rocket Mortgage "fraudulently remove[d] the Broker commission from the [Final] Closing Disclosure right before sending the final loan documents out to the Title Company with specific instructions to the Escrow Officer to not

5

pay such commission to the Broker."[2] (*Id.*, PageID.247).

Rocket Mortgage now moves to dismiss Blackwood's amended counterclaim, arguing that it fails to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 34). For the reasons set forth below, the Court agrees.

### B. Legal Standards

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a [counter]complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the countercomplaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

---

[2] In support of this allegation, Blackwood attaches an email, dated September 21, 2022, between two Rocket Mortgage representatives, discussing steps to take to "ensure this broker is not compensated" on Loan 6044. (ECF No. 29, PageID.250).

6

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, the leniency granted to pro se litigants is not boundless, and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C.   Analysis

As set forth above, Blackwood pleads a counterclaim for fraud against Rocket Mortgage. In order to state a claim for fraud under Michigan law, Blackwood must allege specific facts establishing that:

> (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the misrepresentation, the defendant knew that it was false, or made it

7

> recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Miller v. Joaquin*, 431 F. Supp. 3d 906, 916 (E.D. Mich. 2019) (quoting *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 27 (1998)). Generally, a claim of fraud cannot be based on a promise of future conduct. *See Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). An exception to this rule exists, however, if a promise is made in bad faith without the intention to perform it. *Id.* at 337-38.

In its motion to dismiss, Rocket Mortgage argues that even if Blackwood sufficiently alleged that it made a material misrepresentation, which it strongly contests,[3]

---

[3] Rocket Mortgage's primary argument is that there was no material misrepresentation with respect to payment of the commission on Loan 6044. (ECF No. 34, PageID.304-08). Specifically, it points out that the inclusion of the commission on the August Closing Disclosure cannot be a material misrepresentation because it was a "classic" promise of future performance – namely, a statement made on August 20, 2022, that indicated commission would be paid on Loan 6044's anticipated closing date of September 9, 2022. (*Id.*, PageID.305) (citing ECF No. 34-1). As set forth above, however, a claim for fraud can exist if a promise of future performance is made in bad faith without the intention to perform it. *See Hi-Way Motor Co.*, 398 Mich. at 337-38. Here, that is exactly what Blackwood alleges – namely, that Rocket Mortgage "falsely showed the Broker commission on the [August] Closing Disclosure for about 5 weeks with the undisclosed malice [sic – malicious] intention of not paying it." (ECF No. 29, PageID.246-47). In support of this allegation, Blackwood attaches an email, dated September 21, 2022, between two Rocket Mortgage representatives, discussing steps to take to "ensure this broker is not compensated" on Loan 6044. (*Id.*, PageID.250). According to Rocket Mortgage, the entirety of this email chain (the "September 2022 Email Chain") – only a portion of which was attached to Blackwood's amended counterclaim – belies Blackwood's allegation that it never intended to pay the commission at issue. (ECF No. 34, PageID.299-300). Specifically, Rocket Mortgage asserts that it intended to pay the commission at the time the August Closing Disclosure was issued; however, a subsequent audit uncovered Cito's and Blackwood's allegedly wrongful actions, thus leading to the ultimate decision to allow Loan 6044 to close "only if the broker compensation is zero." (ECF No. 34-2, PageID.321). The problem with this argument, however, is that although the September 2022 Email Chain references Loan 6044 as being "part of a larger scale partner audit" (*Id.*, PageID.322), it does not establish when that audit was commenced. Thus, it is possible that the audit began prior to issuance of the August Closing Disclosure, in which case Rocket Mortgage

8

she still has failed to state an actionable claim for fraud as to herself, as an individual, because she has not alleged that the "misrepresentation was made to her, in her individual capacity," or that she *personally* suffered any damage as a result of Rocket Mortgage's alleged actions. (ECF No. 34, PageID.308-09). The Court agrees.

First, the law is clear that "[a] shareholder – even a sole shareholder –does not have standing to assert claims alleging wrongs to the corporation." *Chowdhury v. VEON Ltd.*, No. 21CIV3527JPCRWL, 2022 WL 956271, at *4 (S.D.N.Y. Mar. 30, 2022) (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987)). This principle was explained in *Blixseth v. Cushman & Wakefield of Colorado, Inc.*, 678 F. App'x 671, 675-76 (10th Cir. 2017). In that case, the plaintiff husband and (ex-) wife were the sole shareholders of the Yellowstone Mountain Club, LLC. Yellowstone Club had gone into bankruptcy, and the shareholders filed a civil action in their own names, alleging various causes of action – including fraud and misrepresentation – against the Yellowstone Club's lender, Credit Suisse. The district court dismissed the shareholders' action, finding they lacked prudential standing to assert the claims because the claims actually belonged to the Yellowstone Club. In affirming the decision, the Tenth Circuit fully adopted the district court's reasoning, explaining:

> . . . the district court correctly applied the general rule that shareholders lack standing to assert claims when their losses are only derivative of a corporation's losses, meaning that the individual's losses depend on the company's losses. [] In ruling, the district court also considered

---

arguably could have been aware of Cito's and Blackwood's alleged wrongdoing – and, thus, could have had no intention of paying commission on Loan 6044 – at the time the promise about the future commission payment was made. Regardless, the Court need not resolve this issue, as Blackwood's counterclaim for fraud fails for the other reasons discussed herein.

> an exception to this rule, one allowing shareholders "with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." []  But the district court concluded that this exception didn't apply.  It reasoned that [the shareholders] had signed the loan documents with Credit Suisse as the Yellowstone Club's manager, that Credit Suisse had lent money to the Yellowstone Club and not [the shareholders], and that Credit Suisse's alleged misrepresentations had been made to [the shareholders] as President of [Yellowstone Club's parent], and as the Yellowstone Club's manager.  Thus, the district court concluded that [the shareholders] lacked prudential standing to assert [their] RICO, fraud, breach of fiduciary duty, negligence, and negligent misrepresentation claims against the Defendants because [their] alleged injuries derived from the Yellowstone Club's injuries.

*Blixseth*, 678 F. App'x at 675-76.

Blackwood's attempt to assert a fraud claim fails for the same reasons the shareholders' claims failed in *Blixseth*.  As set forth above, Blackwood alleges that Rocket Mortgage committed fraud when it allegedly made the knowingly false representation that a specific commission would be paid on Loan 6044.  (ECF No. 29).  However, Blackwood has not alleged that such misrepresentation was made to her, *in her individual capacity*.  Rather, she alleges that Rocket Mortgage "made false representations on promising to pay the *Broker Commission* for originating the Counterclaim loan."  (ECF No. 29, PageID.246) (emphasis added).  That allegation is consistent with the parties' Agreement, which provides that any commission is to be paid directly to the "Broker" – defined in the Agreement as "Cito Mechanical Design" – not to Blackwood.  (ECF No. 1-1, PageID.28 ("[Rocket Mortgage] shall pay to [Cito], a fee, at the time of closing, for any mortgage loan [Cito] has submitted to [Rocket Mortgage] and for which [Cito] has provided actual services as a mortgage loan originator ….")).  In fact, at the October 10, 2023 hearing on

Rocket Mortgage's initial motion to dismiss, Blackwood admitted that Rocket Mortgage paid all commissions under the Agreement to Cito, not to her individually. Specifically, upon questioning, Blackwood stated:

> THE COURT: But … my understanding is it wasn't your commission. It was Cito's commission. Did you ever get paid commissions directly made out to your name?
>
> BLACKWOOD: No, no.
>
> THE COURT: So the monies would always go from Rocket to Cito?
>
> BLACKWOOD: Yeah. Yes, that's right, your Honor….

(ECF No. 30, PageID.259).[4]

And, the very document on which Blackwood relies – namely, the August Closing Disclosure – specifically provides for broker compensation "to Cito Mechanical Design, Inc." (ECF No. 29, PageID.251).

In sum, Blackwood simply has not alleged that Rocket Mortgage made a material misrepresentation *to her as an individual*. Rather, at most she alleges such a misrepresentation was made to Cito, or to her in her capacity as Cito's shareholder and/or officer. Similarly, Blackwood has not pled that she *personally* suffered damage as a result of Rocket Mortgage's failure to pay commission on Loan 6044. Instead, any loss she suffered was derivative of the loss Cito incurred when Rocket Mortgage failed to pay it the commission in question. Thus, *Blackwood's* counterclaim for fraud should be dismissed.

---

[4] In ruling on a motion to dismiss, a court may consider materials in addition to the complaint if such materials are public records or otherwise appropriate for taking judicial notice. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2018).

## II. RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Rocket Mortgage's Motion to Dismiss Blackwood's Counterclaim Under Rule 12(b)(6) **(ECF No. 34)** be **GRANTED**.

Dated: April 22, 2024              s/David R. Grand
Ann Arbor, Michigan            DAVID R. GRAND
                                         United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 22, 2024.

                                          s/Eddrey O. Butts
                                          EDDREY O. BUTTS
                                          Case Manager